Entered on Docket
March 04, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed March 04, 2010

_____
Marilyn Morgan
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

MICHAEL AUBUCHON and ANNA AUBUCHON,

Debtors.

Case No. 09-56881-MM

Chapter 13

**MEMORANDUM DECISION AND ORDER ON DEBTORS' MOTION FOR VALUATION OF RESIDENCE AND AVOIDANCE OF SECOND DEED OF TRUST**

## INTRODUCTION

Before the court is the debtors' motion for valuation of their residence and for avoidance of the second deed of trust held by Central Coast Federal Credit Union. Because there is sufficient equity in the residence to secure in part the second deed of trust, the anti-modification protection of Bankruptcy Code § 1322(b)(2) precludes the avoidance of the lien. The second deed of trust of Central Coast FCU is enforceable in this bankruptcy case, and the debtors' motion must be denied.

## FACTUAL BACKGROUND

Michael Aubuchon and Anna Aubuchon filed a voluntary petition under chapter 13 on August 18, 2009 and scheduled their residence at 221 Via Paraiso, Monterey, California as an asset of the estate. The subject property is located in a suburban residential neighborhood of Monterey, California that consists of older semi-custom and custom homes. Although the subject property does not have a view

1

MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION

of Monterey Bay, many of the homes in the area have bay views. The property is situated in close proximity to Del Monte Shopping Center, schools, employment centers, and transportation and has good access to highways and major arteries. The debtors purchased the property in 1995, but it was originally constructed in 1962 and consists of three bedrooms and two bathrooms in approximately one thousand three hundred ninety square feet of gross living area. The property includes a detached two-car garage, a fireplace, hardwood floors, wood fencing, and french doors that open to a patio. It has also been updated with a newer wood shake roof and water heater and with central forced air heating. The kitchen has upgraded features such as granite countertops, high-end stainless steel appliances, including a six-burner stove, new cabinetry, and new paint.

The residence is encumbered by a first deed of trust securing an obligation to US Bank National Association in the amount of $525,232.91 as of the petition date. Central Coast FCU holds a second deed of trust that secures an equity credit line with an outstanding balance of $82,347.91. The Aubuchons' proposed chapter 13 plan provides that they will make payments directly to the holder of the first deed of trust. However, they have proposed no payments on the obligation secured by the second deed of trust. Instead, paragraph 8 of the debtors' proposed plan provides:

> The Debtor will file a motion to avoid the lien of Central Coast Fed Cred regarding the second mortgage account #7132775140002. The Trustee shall make disbursements to the creditors pursuant to section 2(d).

The proposed plan further provides in Section 2(d) that holders of unsecured claims will receive no distribution.

The Aubuchons filed this motion to avoid the second deed of trust as wholly unsecured, asserting that, pursuant to Bankruptcy Code § 1322(b), they may modify the rights of Central Coast FCU under their chapter 13 plan. Central Coast FCU disputes the debtors' valuation of their residence and has objected to confirmation of the debtors' proposed plan and to this motion. The credit union responds that there is sufficient equity to fully secure both the first deed of trust and the second deed of trust of Central Coast FCU, so the Supreme Court decision in Nobelman prohibits the stripping of its lien.

The median home price in Monterey rose from $510,000 in the first quarter of 2009 to $545,000 in the third quarter before falling to $517,000 during the last quarter of 2009. The court conducted an evidentiary hearing to determine the fair market value of the subject property. The respective appraisers

2

**MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION**
Case: 09-56881   Doc# 31   Filed: 03/04/10   Entered: 03/04/10 10:27:56   Page 2 of 10

for the Aubuchons and for Central Coast FCU both used the sales comparison approach but derived valuations that vary by approximately $150,000. At trial, the debtors proffered the testimony of Andrew Poulsen, a licensed real estate appraiser who specializes in Monterey County properties. Poulsen is employed by Independent Real Estate Research and is qualified to appraise single family residences and two to four unit residential properties. He conducted an appraisal of the subject property, effective August 7, 2009, by selecting six comparison properties, four of which represent actual sales that closed in the six months preceding the effective date of his appraisal. The sales prices for these properties range from $470,000 to $545,000. The other two comparison properties are pending sales listed for $375,000 and $584,000, respectively. The sale of comparison property #5, 415 Herrmann Drive, Monterey, California, actually closed escrow for $467,500 two weeks following the effective date of the Poulsen appraisal.

Typical of the sales comparison approach, Poulsen made line item adjustments to account for variations between features of the subject property and features of the comparison properties. For example, he made adjustments of $5 per square foot for differences in excess of one thousand square feet for lot size, $50 per square foot for differences in the gross living area, $5,000 for variations in bathroom count, $10,000 per garage space and $5,000 per carport, and one percent (1%) of the sales price per month for changes in market condition. Poulsen also made an adjustment if the comparison property has a view of Monterey Bay, but he did not make any adjustments for variations in bedroom count. He characterized the subject property as being in average condition and made no adjustments for variations in the condition of the properties. Applying these adjustments, Poulsen derived an estimate of the fair market value of the property of $490,000, which is the amount the debtors listed in their schedules.

Gregory Migdale, a certified residential real estate appraiser who specializes in Monterey County properties, testified on behalf of Central Coast FCU. His certified license requires a higher level of education and appraisal experience than Poulsen's residential license and authorizes Migdale to conduct appraisals of more complex properties and transactions valued in excess of $1 million. Migdale conducted two appraisals of the subject property, the first of which had an effective date of September 15, 2009. He used six comparison properties, including two pending sales and one active listing. The

**MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION**

sales prices for the comparison properties range from $399,000 to $1,000,000.

Migdale made line item adjustments of $3 per square foot for differences in excess of one thousand square feet for lot size, $70 per square foot for differences in excess of one hundred square feet for the gross living area, $500 per year for differences in excess of fifteen years for the age of houses that have not been remodeled, $15,000 for bedroom count, $10,000 for bathroom count, $3,000 per fireplace, $3,000 for wall heating that had not been upgraded, $15,000 per garage space and $5,000 per carport, and one percent (1%) of the sales price per month for changes in market condition. He testified that these adjustments are standard for the market area in which the subject property is located. He also made adjustments for bay views and for differences in the condition of the comparison properties, characterizing the condition of the subject property as above average and well maintained. Migdale used one comparison property at 134 Monte Vista Drive, Monterey, California, an actual closed sale, that Poulsen also used in his report, but Migdale made different adjustments. He derived a fair market value of $625,000 for the subject property effective September 15, 2009.

Migdale appraised the subject property again effective January 28, 2010. For this appraisal, he selected five comparison properties, including one pending sale. The sales prices for the comparison properties range from $526,800 to $640,000. Migdale derived a fair market value of $645,000 for the subject property in the latter report.

The testimony of Migdale and the cross-examination of Poulsen establishes that there were marked disparities in the condition of the subject property and the six comparison properties that Poulsen used in his appraisal. Migdale inspected the exterior and contacted the listing agent or the selling agent for each of the comparison properties to gather information concerning the condition of the interior of the properties. Poulsen personally inspected comparable #1 at 15 Mar Vista Drive, Monterey and contacted the listing agent for comparable #2 at 133 Via Gayuba, Monterey but otherwise relied on the descriptions in the MLS listings.

Although it is described in the MLS listing as a two bedroom, Poulsen described comparison property #1 as a three bedroom in his appraisal. The property has not been remodeled and requires repair work. The second floor is also inaccessible from the first floor absent exiting to a staircase outside the structure, giving rise to a functional utility issue.

Comparison property #2 in Poulsen's appraisal similarly requires updating as it has the original kitchen and bathroom. The listing agent described the property in the MLS listing as a "fixer" with "good potential", which are terms used in the industry as euphemisms to indicate that the property is not in turnkey condition. Poulsen conceded that the description suggests that some sweat equity is needed. In fact, the property has mold in the walls and asbestos floor tile, so substantial remedial work appears necessary.

Comparison property #3, 134 Mar Vista Drive, Monterey, was used in both Poulsen's appraisal and in Migdale's September 15, 2009 appraisal. This property also has the original kitchen and bathrooms, so substantial improvements to the property are needed. It has had extensive termite work and requires a new deck, roof repairs, new floor coverings, and new paint. Migdale made an adjustment of $100,000 to account for the disparity between the condition of this comparison property and the subject property.

Poulsen's comparison property #4, 23 Mar Vista Drive, Monterey, is in need of a new roof and updating to the kitchen and bathrooms. The listing agent for comparison property #5, 415 Herrmann Drive, Monterey, described the property in the MLS listing as a "contractor's dream," an "as-is sale," and the "worst property in the best location," all terms that connote the need for additional repair work. Although the property had been partially remodeled, Poulsen acknowledged that more improvements may be required. Lastly, comparison property #6, 59 Wellings Place, Monterey, has the original 1960 kitchen but has been updated with a newer roof. It also did not include any appliances.

## **LEGAL DISCUSSION**

By its terms, § 506(a) of the Bankruptcy Code bifurcates claims into distinct secured and unsecured components. It provides in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a). The second sentence of § 506(a) provides guidance to bankruptcy courts in valuing property subject to a lien. In re Arnold and Baker Farms, 177 B.R. 648, 655 (B.A.P. 9th Cir. 1994),

aff'd, 85 F.3d 1415 (9th Cir. 1996), cert. denied, 519 U.S. 1054 (1997). It states:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Bankruptcy Rule 3012 further provides that the court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion and after a hearing on notice to the holder of the secured claim. FED. R. BANKR. P. 3012. Market value is defined as "'[t]he most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably and assuming the price is not affected by undue stimulus.'" Arnold and Baker Farms, 177 B.R. at 657. Courts determine value on a case by case basis, taking into account the purpose of the valuation. Id. at 656.

Section 1322(b)(2) of the Bankruptcy Code allows a chapter 13 plan to modify the rights of creditors, including the holders of secured claims, other than a claim secured only by real property that is the debtor's principal residence. This provision protects home mortgages from modification and the general right in chapter 13 to restructure debts. In Nobelman v. American Savings Bank, the Supreme Court held that § 1322(b)(2) prohibits the "strip off" of the unsecured portion of an undersecured claim from a chapter 13 debtor's principal residence. Nobelman v. American Savings Bank, 508 U.S. 324, 331-32 (1993). However, it did not reach the issue whether a wholly unsecured homestead lien may be "stripped off." The Ninth Circuit has joined the majority of courts in determining that § 1322(b)(2) does not protect the rights of a holder of a totally unsecured junior mortgage on the debtor's residence against modification under a plan, so the junior creditor's lien may be avoided. In re Zimmer, 313 F.3d 1220, 1226 (9th Cir. 2002). The reason that the anti-modification protection of § 1322(b)(2) is not available to a wholly unsecured creditor is that, pursuant to § 506(a)'s bifurcation of claims, an unsecured homestead lien does not constitute a secured claim. Id. at 1227. See also In re Lam, 211 B.R. 36, 40-41 (B.A.P. 9th Cir. 1997), appeal dism'd, 192 F.3d 1309 (9th Cir. 1999). Consequently, a homestead lien that is entirely unsecured may be "stripped off" or avoided in chapter 13. Id.

The dispositive issue in this case is whether there is sufficient equity to secure in part the junior trust deed of Central Coast FCU or whether that lien is wholly unsecured. If some equity is available

to secure the junior lien, then the rights that Central Coast FCU possesses as the holder of a claim secured by a homestead lien would be entitled to the anti-modification protection of § 1322(b)(2). Nobelman, 508 U.S. at 328- 30. Otherwise, its junior lien may be avoided. Whether the claim of Central Coast FCU is secured depends on the valuation of the debtors' property. See Zimmer, 313 F.3d at 1223. The appropriate date to determine valuation for lien stripping purposes is the petition date. In re Dean, 319 B.R. 474, 479 (Bankr. E.D. Va. 2004); In re Aubain, 296 B.R. 624, 637 (Bankr. E.D.N.Y. 2003); In re Edwards, 245 B.R. 917, 919 (Bankr. S.D. Ga. 2000).

Among the appraisals admitted into evidence at trial, Poulsen's appraisal provides the best starting point for a determination of the fair market value of the subject property because its effective date, August 7, 2009, best approximates the petition date of August 18, 2009. However, the Poulsen appraisal is flawed in several respects discussed below. While both Poulsen and Migdale were qualified as experts on the valuation of residential real property, the court ascribed considerably greater weight to the testimony of Migdale. Migdale's testimony was cogent, persuasive, and supported by the evidence. For example, his characterization of the condition of the subject property as above average rather than merely average is credible and is supported by the photographs depicting the interior of the subject property. The subject property has hardwood floors, french doors, granite countertops in the kitchen, and stainless steel appliances. The evidence also indicates that it has an updated roof, water heater, central forced air heating, new cabinets, and new paint. Migdale testified that because many of the properties in the subject's market area have not been updated, the market places a particular premium on properties in the condition of the subject property. Notwithstanding these upgraded features, Poulsen failed to make adjustments to account for the disparity in condition between the subject property and the comparison properties.

Migdale personally contacted the listing agent or selling agent for each of the comparison properties to determine the condition of the interior. Poulsen, on the other hand, relied primarily on the descriptions in the MLS listings. Poulsen described the condition of comparison property # 1, 15 Mar Vista Drive, Monterey, as average, the same as his description of the subject property. However, the evidence indicates that, unlike the subject property, comparison property # 1 has never been remodeled. Migdale testified that the agent described the condition of the property as "horrible" and indicated the

7

**MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION**
Case: 09-56881   Doc# 31   Filed: 03/04/10   Entered: 03/04/10 10:27:56   Page 7 of 10

property "needed to be gutted." He testified that a line item adjustment for condition is warranted, and the court finds that a $50,000 adjustment is appropriate. Poulsen further characterized comparison property #1 as having three bedrooms. According to the MLS listing, however, the property has only two bedrooms. Migdale testified that an adjustment for bedroom count is typical as homeowners characterize their homes and perceive value in terms of bedroom count. An additional adjustment of $15,000 for bedroom count is in order. The testimony concerning comparison property #1 reveals that the second floor is inaccessible from the first floor unless one exits to an exterior staircase. A further upward adjustment of $15,000 appears appropriate to account for functional utility related to inferior access. Based on these adjustments totaling $80,000 in addition to others included in Poulsen's report, the adjusted sales price of comparison property #1 is $537,550.

With respect to comparison property #2, 133 Via Gayuba, Monterey, described as a "fixer" with "good potential," the evidence indicates that the property has the original 1956 kitchen and bathrooms, mold in the walls, and asbestos floor tiling. Poulsen conceded that some sweat equity was needed to bring the property up to standard. Migdale and the listing agent even joked about the characterization of the condition of the property in the MLS listing. Substantial improvements and repair work appear necessary, so an upward adjustment of $75,000 for the variations in condition is appropriate. With that adjustment, the adjusted sales price of comparison property #2 would be $574,700.

Both Poulsen and Migdale used comparison property #3, 23 Mar Vista Drive, Monterey, in their appraisals, but significantly, Poulsen did not include an adjustment for the condition of the property. The evidence indicates that the property needs extensive updates to the original 1968 kitchen, original bathrooms, deck, and roof. It also requires cosmetic improvements such as floor coverings and paint. Migdale made an adjustment of $100,000, which the court adopts as justified. With that adjustment, the adjusted sales price of comparison property #3 would be $606,000.

Comparison property #4, 23 Mar Vista Drive, Monterey, according to the evidence, is in need of a new roof and some updating to the kitchen and bathrooms. An upward adjustment of $50,000 for variations in condition appears appropriate and would increase the adjusted sales price of the property to $556,300.

Comparison property #5, 415 Herrmann Drive, Monterey, closed escrow for $467,500 two

8

**MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION**
Case: 09-56881   Doc# 31   Filed: 03/04/10   Entered: 03/04/10 10:27:56   Page 8 of 10

weeks following the effective date of the Poulsen appraisal, so the court will use that actual sales price for purposes of estimating the fair market value of the subject property as of the petition date. Although the property has been partially remodeled, it has been described in the MLS listing as a "contractor's dream," an "as-is sale," and the "worst property in the best location." To adjust for differences in condition, an upward adjustment of $25,000 appears in order. With that adjustment to the actual sales price, the adjusted sales price of comparison property #5 is $473,150.

Although comparison property #6, 59 Wellington Place, Monterey, has a newer roof, it has the original 1960 kitchen and no included appliances. Migdale testified that the subject property has additional updates that comparison property #6 lacks. An upward adjustment of $25,000 to account for the differences in condition between this property and the subject property appears appropriate. The adjusted sales price for comparison property #6 would be $577,450.

While additional adjustments may be appropriate to account for variations in other features, they are unnecessary for the present purposes. With the foregoing condition adjustments to the six comparison properties identified in the Poulsen appraisal report, the court finds that the estimated fair market value of the subject property is at least $556,000. Based on this analysis, it appears that there is sufficient equity to fully secure the first deed of trust in the amount of $525,232.91 and to secure in part the second deed of trust of Central Coast FCU. Since the second deed of trust is partially secured, Central Coast FCU is entitled to the rights of a holder of a secured claim. Section 1322(b)(2) protects the lien of Central Coast FCU from modification by the debtors' chapter 13 plan, and <u>Nobelman</u> prohibits the "stripping off" of its lien.

## CONCLUSION

For the reasons set forth above, Central Coast FCU is entitled to the protections of the anti-modification provision of § 1322(b)(2), so the debtors' motion to avoid the second deed of trust must be denied.

Good cause appearing, IT IS SO ORDERED.

\* \* \* END OF ORDER \* \* \*


9

**MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION**
Case: 09-56881   Doc# 31   Filed: 03/04/10   Entered: 03/04/10 10:27:56   Page 9 of 10

Case No. 09-56881-MM

## SERVICE LIST

T KEVIN DOUGHERTY
DOUGHERTY LAW OFFICES
601 S MAIN ST
SALINAS CA 93901

ANNE SECK
LISA OMORI
NOLAND HAMMERLY ETIENNE & HOSS
PO BOX 2510
SALINAS CA 93902-2510

DEVIN DERHAM-BURK
OFFICE OF THE CHAPTER 13 TRUSTEE
PO BOX 50013
SAN JOSE CA 95150-0013

10

**MEMORANDUM DECISION AND ORDER ON MOTION FOR VALUATION**
Case: 09-56881   Doc# 31   Filed: 03/04/10   Entered: 03/04/10 10:27:56   Page 10 of 10